UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT

Eastern District of Kentucky
FILED
SEP 0 9 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

---

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    v.

WILLIAM J. COVINGTON,

    Defendant.

Civil Action No. 05-64-KKC

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges for its Complaint the following:

### SUMMARY

1. From at least 2001 through 2003, defendant William J. Covington, the former President and CEO of Farmers Deposit Bank ("Farmers"), a wholly-owned subsidiary of Premier Financial Bancorp, Inc. ("Premier"), a public company, engaged in a variety of fraudulent acts designed to conceal mounting loan losses at Farmers from Farmers' board of directors and auditors, from Premier's management and board of directors, and from federal and state banking regulators.

2. Among other things, Covington concealed substantial loan losses at the bank by recording loans under fictitious or misleading names and using the proceeds from these loans to keep earlier loans current; altering documents presented to Farmers' board of directors; altering the loan documents to assign a later due date, thus making the loans

appear current; structuring loans by dividing them into smaller amounts to avoid meeting the minimum loan amount required for review by Farmers' auditors and board of directors; recording fictitious payments on loans; reassigning loan payments to unrelated accounts; and releasing collateral securing loans without requiring payment of the debt.

3. Covington's conduct caused Farmers to report false financial information to Premier. Premier files its financial statements on a consolidated basis and, consequently, Premier filed quarterly and annual reports with the Commission containing materially false and misleading financial statements in 2001, 2002 and 2003. Specifically, Premier's net income for the fiscal year ended December 31, 2001 was overstated by 94 percent, and its net loss for 2002 was understated by 63 percent.

4. As a result of the conduct described in this Complaint, defendant Covington violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78m(b)(5)], and Rules 10b-5 and 13b2-1 [17 C.F.R. §§ 240.10b-5 and 240.13b2-1] thereunder.

5. As a result of the conduct described in this Complaint, defendant Covington also aided and abetted, and unless restrained and enjoined will continue to aid and abet, violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)], and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to enjoin such acts, transactions, practices and courses of business; obtain civil penalties; and for other appropriate relief.

7. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

8. Certain of the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the Eastern District of Kentucky and elsewhere, and were effected, directly or indirectly, by making use of the means and instruments of transportation or communication in interstate commerce, or the means and instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

## DEFENDANT

9. William J. Covington, age 54, is a resident of Eminence, Kentucky. From September 1986 until June 2003, Covington was the President and CEO of Farmers, and a member of Farmers' board of directors.

## FACTS

### Background

10. Premier, headquartered in Huntington, West Virginia, is a multi-bank holding company that operates community bank subsidiaries throughout West Virginia, Ohio, and Kentucky. Premier's common stock trades on the NASDAQ National Market System.

11. In 1996, Premier acquired Farmers, a small community bank located in Eminence, Kentucky. Farmers, like each of Premier's banking subsidiaries, had substantial autonomy in their operations. Each subsidiary bank's president, including Covington, was responsible for the bank's loan accounting treatments, such as the establishment of loan loss allowances and treatment of impaired loans, and served as the primary contact for the bank's auditors and regulators. In addition, each subsidiary bank had its own board of directors, and established and followed its own policies and procedures.

12. As President and CEO of Farmers, defendant Covington managed approximately 40 people including loan officers, bank tellers, and bookkeepers, and was ultimately responsible for Farmers' lending, financial, and accounting functions.

### Covington's Fraudulent Conduct

13. From 2001 through 2003, Covington employed several different strategies to conceal problems with Farmers' loan portfolio. Some examples of his fraudulent conduct are set forth below.

#### *Covington Recorded Loans in Fictitious Names*

14. On multiple occasions, Covington recorded loans in fictitious or misleading names to conceal that he was advancing additional funds to borrowers he was prohibited from extending credit to, or who he knew were not qualified to receive additional credit. Covington then used these funds to keep earlier loans current, thus avoiding write-offs and allowing Farmers to improperly continue to accrue interest income.

15. Covington also intentionally failed to report the related nature of the loans to avoid auditor review. By failing to disclose related loans, Covington circumvented

Farmers' internal controls and deceived others at Farmers and Premier, as well as the auditors, about the extent of credit extended to related parties.

16. For example, in 2002, one of Farmers' borrowers, a local car dealership, had large overdrafts in its Farmers' account. In order to cover these overdrafts, Covington issued loans to individuals related to the owner of the dealership, including the owner's daughter, with the understanding that the proceeds would be deposited in the dealership's account.

### *Covington Altered Documents Presented to Farmers' Board of Directors*

17. On numerous occasions, Covington altered, or directed others to alter, documents presented to Farmers' board of directors so as to conceal problems with Farmers' loan portfolio.

18. Farmers' internal loan review officer prepared monthly exception reports detailing problems with Farmers' loan files, such as missing documents or improper signatures. The exception reports were presented at Farmers' monthly board of directors meetings. Covington ordered the loan review officer to remove from the exception reports problems that he did not want revealed to Farmers' board. As a result, the exception reports disclosed only those items approved by Covington for presentation which would not raise questions or cause further scrutiny.

19. Similarly, Covington controlled the loans that would be shown as past due on reports presented to the board. As a result of his intervention, the past due reports were incomplete and failed to disclose the full extent of the impaired loans.

20. By manipulating the information contained on the monthly exception and past due reports, for at least three years Covington concealed from Farmers' board the extent of Farmers' problems.

### *Covington Bump-Dated Past-Due Loans to Make them Appear Current*

21. In order to create the appearance that past-due loans were current, Covington regularly extended the due date of the loan, a practice known as "bump-dating."

22. For example, in one instance, Covington continued to bump-date a loan for three years after a borrower's death to create the appearance that the loan was current, when it was not.

### *Covington Deliberately Structured Loans to Avoid Review*

23. Covington intentionally structured loans to avoid presenting them to Farmers' auditors and board of directors for review. Farmers' independent auditors conducted yearly on-site reviews of all loans, including loans to related borrowers, in excess of $250,000. To escape the auditors' review, Covington divided loans to the same borrower into amounts less then $250,000.

24. Similarly, Farmers' loan policy required Covington to seek board approval for any loan in excess of $250,000, his personal lending limit. In order to bypass this control, Covington structured loans to remain below this threshold.

25. For example, to avoid presenting the loans to Farmers' board for approval, Covington issued a series of small loans to an individual, who acts as an attorney and sports agent, in several different names including his legal name, the name of his employer, and the name of two of his businesses.

26. On another occasion, Covington issued multiple small loans to an individual, using three different versions of his name, to create the appearance that the loans were to three different borrowers.

### *Covington Made Fraudulent Journal Entries Recording Payments*

27. In order to conceal the fact that a borrower had not made payments, and to create the false appearance that payments were being made on impaired or fictitious loans, Covington often made false entries on Farmers' general ledger journal.

### *Covington Reassigned Loan Payments to Past-Due Loans*

28. Similarly, to create the appearance that past-due loans were current, Covington made payments on overdue or poorly performing loans by reassigning loan payments from unrelated accounts and, in some instances, even making payments from personal accounts he controlled.

29. For example, in 2002, a sports agent and financial advisor paid Farmers $1.5 million in satisfaction of his clients' debts. However, rather than credit the payment to the clients' accounts, Covington allocated the money to completely unrelated and past due accounts to create the appearance that those loans were current.

30. Additionally, on several occasions, Covington directed payments from his personal accounts and his mother's accounts to pay loans that were not related to him or his family.

### *Covington Released Collateral Without Requiring Payment of Debt*

31. On multiple occasions, Covington improperly released collateral securing loans without requiring that the loans be paid in full. Covington pledged the same collateral

7

twice so that he could improperly use that collateral in connection with new loans for borrowers that could not repay their previous loans.

### Premier Filed Reports that Were Materially False and Misleading

32. During 2001, 2002, and 2003, Premier filed annual and quarterly reports with the Commission as required by Section 13(a) of the Exchange Act. Covington's concealment of loan losses caused Farmers' financial and accounting records to be inaccurate by reflecting inadequate reserves for loan losses and recording interest income on delinquent and uncollectible loans.

33. On a monthly and quarterly basis, Covington reported Farmers' falsified financial statements to Premier, which he knew prepared its financial statements on a consolidated basis. Because Premier, in turn, relied on these records to prepare its financial reports, Premier's quarterly and annual Commission filings during 2001 through 2003 likewise contained materially inaccurate financial information.

34. As a result, Premier's annual reports on Form 10-K filed for the years 2001 and 2002, and quarterly reports on Form 10-Q filed for all quarters of 2001, 2002, and 2003 contained financial statements that failed to comply with Generally Accepted Accounting Principles.

### FIRST CLAIM FOR RELIEF

### Covington Violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

35. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 34, inclusive, as if the same were fully set forth herein.

36. From at least 2001 through 2003, as a result of the conduct alleged herein, defendant Covington, in connection with the offer, purchase, or sale of securities, directly or

indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

      (a)    employed devices, schemes or artifices to defraud;

      (b)    obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

      (c)    engaged in acts, transactions, practices, or courses of business which operated as a fraud or deceit upon offerees, purchasers and sellers of securities.

37.    By reason of the foregoing, defendant Covington violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10-5] thereunder.

### SECOND CLAIM FOR RELIEF

**Covington Aided and Abetted Violations of
Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act
and Rules 12b-20, 13a-1 and 13a-13 thereunder**

38.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 37, inclusive, as if the same were fully set forth herein.

39.    From at least 2001 through 2003, as a result of the conduct alleged herein, defendant Covington knowingly provided substantial assistance to Premier, an issuer that:

      (a)    failed to file with the Commission annual, quarterly and other reports in accordance with such rules and regulations as the Commission prescribed as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security;

9

(b) failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the issuer;

(c) failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

i. transactions are executed in accordance with management's general or specific authorization;

ii. transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;

iii. access to assets is permitted only in accordance with management's general or specific authorization; and

iv. the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences; or

(d) failed to add to a statement or report, in addition to the information expressly required to be included, such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading.

40. By reason of the foregoing, defendant Covington aided and abetted violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C.

10

§§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

### THIRD CLAIM FOR RELIEF

#### Covington Violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder

41. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 40, inclusive, as if the same were fully set forth herein.

42. From at least 2001 through 2003, as a result of the conduct alleged herein, defendant Covington knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified any book, record or account described in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]; or falsified, or caused to be falsified, any book, record or account so as not to accurately and fairly reflect the transactions and dispositions of the assets of such issuer.

43. By reason of the foregoing, defendant Covington violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder.

**WHEREFORE**, the Commission respectfully requests that this Court enter an Order:

### I.

Permanently restraining and enjoining defendant Covington from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## II.

Permanently restraining and enjoining defendant Covington from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

## III.

Permanently restraining and enjoining defendant Covington from violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder.

## IV.

Prohibiting defendant Covington from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## V.

Directing defendant Covington to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C.§ 78u(d)(3)].

## VI.

Grant such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

_____
Daniel M. Hawke
David S. Horowitz
Amy J. Greer
Denise Colliers

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA 19106
Ph: (215) 597-3100
Fax: (215) 597-2740

Local Counsel:

GREGORY F. VAN TATENHOVE
UNITED STATES ATTORNEY

_____
THOMAS LEE GENTRY
Assistant United States Attorney
110 West Vine Street, Suite 400
Lexington, KY 40507-1617
Ph: (859) 233-2661, Ext. 152
Fax: (859) 233-2533
Lee.Gentry@usdoj.gov

Dated: September 9, 2005